WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Repwest Insurance Company,           )   No. CV 12-0369-PHX-JAT
                                     )
               Plaintiff,            )   **ORDER**
                                     )
vs.                                  )
                                     )
                                     )
Praetorian Insurance Company; QBE    )
Insurance Group Ltd., and Aon Benfield,)
Inc.,                                )
                                     )
               Defendants.           )
_____)

    Pending before the Court are: (1) Defendant Praetorian's Motion to Dismiss or Stay Proceedings and Compel Arbitration (Doc. 11); (2) Defendant QBE Insurance Group Ltd's Motion to Dismiss (Doc. 16); (3) Plaintiff's Motion to Stay Arbitration (Doc. 34); and (4) Defendant Aon Benfield, Inc.'s Motion to Dismiss, or in the Alternative Motion to Stay (Doc. 40). The Court now rules on the Motions.

**I.   BACKGROUND**

    On February 23, 2012, Plaintiff Repwest Insurance Company ("Plaintiff" or "Repwest") filed its First Amended Complaint (the "Complaint") against Defendants. In its Complaint, Plaintiff alleged claims of breach of contract and breach of the duty of good faith and fair dealing against Defendants Praetorian Insurance Company ("Praetorian"), QBE Insurance Group Ltd. ("QBE"), and Aon Benfield Inc. ("Aon"). As relief, Plaintiff seeks,

1    among other things, declaratory judgments and punitive damages.  All of the following facts

2    are as alleged in the Complaint.

3          Plaintiff Repwest is a corporation that insures property, casualty, and excess workers'

4    compensation risks in the United States.  (Doc. 7 at ¶ 1).  Defendant Praetorian is a

5    corporation that is licensed to write admitted insurance business in all 50 states.  (*Id.* at ¶ 2).

6    Defendant QBE is a foreign corporation with a principal place of business in Sydney,

7    Australia, that, Plaintiff alleges upon information and belief, purchased the assets and

8    liabilities of Defendant Praetorian in December 2006 for $800 million.  (*Id.* at ¶ 4).

9    Defendant Aon is a corporation that, Plaintiff alleges upon information and belief, purchased

10    the assets and liabilities of Benfield, Inc.  (*Id.* at ¶ 6).

11          Plaintiff Repwest issues excess workers' compensation insurance policies, and,

12    beginning in 1988, Repwest entered into a series of reinsurance agreements with Defendant

13    Praetorian designed to provide reinsurance coverage for losses incurred under workers'

14    compensation insurance policies issued by Repwest.  (*Id.* at ¶¶ 11-12).

15          On May 1, 1991, Repwest entered into a Excess Workers' Compensation Quota Share

16    Agreement (the "Quota Share Agreement") with various companies, including Praetorian

17    (previously known as the Insurance Company of Hanover) and Conestoga Casualty Insurance

18    Company ("Conestoga").[1]  (*Id.* at ¶¶ 13-15).  The Quota Share Agreement provided, in part,

19    that Repwest would be indemnified for an agreed percentage of any losses within the original

20    risk under the workers' compensation policies it issued to its insureds.  (*Id.* at ¶ 14).

21    Defendant Praetorian and Conestoga are named as Reinsurers in the Quota Share Agreement,

22    which obligates each to individually indemnify Plaintiff for a certain percentage of Plaintiff's

23    losses paid on workers' compensation insurance policies issued by Repwest.  (*Id.* at ¶ 15).

24    In exchange for Plaintiff's right to indemnification from Defendant Praetorian and

25

26

27          [1] The Quota Share Agreement is attached to the Complaint as Exhibit A.  (*See* Doc.

28    7, Exhibit A).

1    Conestoga, Plaintiff ceded a premium to Defendant Praetorian and Conestoga and that
2    premium was accepted and never disputed.  (*Id.* at ¶ 17).

3        Article V of the Quota Share Agreement set forth six categories of reinsurance that
4    Plaintiff was required to maintain, including Aggregate Excess of Loss reinsurance.  (*Id.* at
5    ¶ 23).  Pursuant to Article V of that Agreement, Plaintiff, on behalf of itself and Defendant
6    Praetorian and Conestoga, entered into an Aggregate Loss Reinsurance Contract effective
7    May 1, 1991 (the "Aggregate Contract").  (*Id.* at ¶ 26).[2]   Under the Aggregate Contract,
8    Plaintiff, Defendant Praetorian, and Conestoga are the "ceding Company" and Defendant
9    Praetorian is the sole reinsurer.  (*Id.* at ¶ 28).  The Aggregate Contract provided that Repwest
10   and Conestoga would be indemnified by Defendant Praetorian "for the amount by which the
11   Company's losses incurred exceed[ed] its retention," after the Company's losses equaled
12   70% of its net earned premium for the same contract year, not to exceed 170% of the
13   Company's net earned premium for the contract year.  (*Id.* at ¶ 29).

14       Article XI of the Aggregate Contract provided that the Company could elect to
15   commute the losses of "one or both" of Repwest's Reinsurers and, in the event of such
16   commutation, the Reinsurer would pay the Company an amount equal to 65% of ceded
17   premiums less paid losses plus interest, all for the period being commuted.  (*Id.* at ¶ 34).
18   Plaintiff alleges that Article XI's use of the term "Company" requires assent of all three
19   parties to effectively commute Praetorian or Conestoga's liability under the Aggregate
20   Contract.  (*Id.* at ¶ 36).  Under Article XI of the Aggregate Contract, Defendant Praetorian
21   was required to establish and maintain a commutation fund to remit to the Company in the
22   event of such commutation.  (*Id.* at ¶ 35).

23       The term of the Quota Share Agreement began as of 12:01 a.m. PST on May 1, 1991
24   and remained continuously effective until cancelled.  (*Id.* at ¶ 20).  The Quota Share
25   Agreement was terminated with respect to Conestoga through a Termination Agreement on
26

27       [2]  The Aggregate Contract is attached to the Complaint as Exhibit B.  (*See* Doc. 7,
28   Exhibit B).

November 15, 1996.  (*Id.* at ¶ 25).  Likewise, the Quota Share Agreement was terminated with respect to Defendant Praetorian through a Termination Agreement on September 1, 1997.  (*Id.*).

During the drafting and execution of the Aggregate Contract and the Quota Share Agreement, Defendant Aon acted as Repwest's reinsurance intermediary broker and entered into a contract to that end (the "Broker Contract").[3]  (*Id.* at ¶ 41).

On November 6, 1998, Defendant Aon communicated Conestoga's wish to commute its interests and liabilities under the Aggregate Contract to both Repwest and Praetorian.  (*Id.* at ¶ 44).  In that communication, Defendant Aon and/or Conestoga acknowledged that it needed the approval of all parties to the Aggregate Contract as a prerequisite for a valid commutation.  (*Id.* at ¶ 45).  On June 21, 1999, Defendant Praetorian asked Defendant Aon if Plaintiff had agreed to the commutation and, the next day, Aon informed Defendant Praetorian that Plaintiff had not yet given its approval.  (*Id.* at ¶¶ 47-48).  On July 8, 1999, Defendant Aon "erroneously stated that it had received 'verbal approval' from [Plaintiff], but would follow-up in writing by fax," but no approval for commutation was ever received from Plaintiff.  (*Id.* at ¶ 49).

Plaintiff alleges that, despite acting as Plaintiff's reinsurance intermediary broker, Defendant Aon failed to obtain Plaintiff's approval for the proposed commutation, failed to inform Plaintiff of any risks associated with the proposed commutation, and facilitated and negotiated the proposed commutation between Conestoga and Defendant Praetorian.  (*Id.* at ¶¶ 50-52).  Plaintiff further alleges that Defendant Aon unilaterally determined that Plaintiff's authorization of the proposed commutation was unnecessary.  (*Id.* at ¶ 53).  Plaintiff alleges that, despite failing to obtain Plaintiff's written approval, Defendant Praetorian and Conestoga "intentionally and willfully violated the terms of the Aggregate Contract by proceeding to bi-laterally commute a portion of Defendant Praetorian's liability

---

[3]  Arizona Revised Statutes section 20-486.02 provides provisions that are required to be in the contract between the reinsurance intermediary broker and the insurer it represents.  *See* Ariz. Rev. Stat. Ann. § 20-486.02.

1   to 'the Company' in complete disregard" of Defendant Praetorian's duties to Plaintiff.  (*Id.*

2   at ¶¶ 54-55).

3       Plaintiff alleges that, without Plaintiff's consent or knowledge, Defendant Praetorian

4   and Conestoga entered into an agreement (the "Commutation Agreement"),[4] which purported

5   to commute Praetorian's liability to Conestoga as reinsurer under the Aggregate Contract.

6   (*Id.* at ¶ 60).

7       In the summer of 2008, Plaintiff sent Defendant Praetorian, through Defendant Aon,

8   a billing related to amounts due and owing by Praetorian under the Aggregate Contract.  (*Id.*

9   at ¶ 67).  Thereafter, Defendant Praetorian denied that it owed such amount because of the

10  Commutation Agreement.  (*Id.* at ¶¶ 68-71).  Defendant Praetorian then sent a letter of credit

11  demand to Plaintiff, as was provided for in a 2001 Reinsurance Contract.  (*Id.* at ¶¶ 63-66,

12  72).  Plaintiff declined to post the letter of credit on the basis of its claim that Defendant

13  Praetorian still owed past due amounts under the Aggregate Contract.  (*Id.* at ¶ 75).

14      As a result of these allegations, Plaintiff claims that Defendant Praetorian (and QBE)

15  violated its duty of good faith and fair dealing (Count II), Defendant Praetorian (and QBE)

16  have breached and continue to breach their obligations under the Aggregate Contract and

17  Quota Share Agreement (Count III), and Defendant Aon breached its obligations under the

18  Broker Contract, by soliciting and negotiating the Commutation Agreement between

19  Defendant Praetorian and Conestoga (Count VI).

20      As relief, Plaintiff seeks: compensatory damages, a declaratory judgment as to

21  Defendants Praetorian and QBE (Count I) that (1) the word "Company" in the Aggregate

22

23

24  [4] The Commutation Agreement is attached to the Complaint as Exhibit C.  (*See* Doc.
    7, Exhibit C).  Plaintiff refers to this Agreement as a "retrocession agreement."  Plaintiff
25  argues that, because Praetorian and Conestoga failed to obtain Repwest's consent, the
    attempt at commutation was instead a retrocession agreement.  Plaintiff's conclusion that the
26  Agreement is a retrocession agreement is not a fact, but is rather a legal conclusion.  Because
    the Agreement itself is entitled "Commutation Agreement," the Court will refer to it as such
27  for the purposes of this Order.  The Court expresses no opinion as to the merits of Plaintiff's
28  claim that the Agreement in fact operates as a retrocession agreement.

Contract includes Repwest, Praetorian (and QBE), and Conestoga collectively; (2) that Defendants breached the Aggregate Contract and, by inference, the Quota Share Agreement; (3) that Praetorian's (and QBE's) unjustifiable and bad faith conduct prejudiced Plaintiff, (4) that Praetorian (and QBE) violated its duty of good faith and fair dealing, punitive damages (Count IV), and a declaratory judgment (Count V) as to Defendant Aon that (1) Aon's conduct constituted a breach of contract that existed between Aon and Repwest pursuant to Arizona Revised Statutes section 20-486.02, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

In response to the Complaint, Defendant Praetorian now moves to compel arbitration of the claims against it and argues that there are arbitration clauses in the Quota Share Agreement and the Aggregate Contract that require Plaintiff to arbitrate its claims.  To that end, Defendant Praetorian also served an Arbitration Demand on Plaintiff.  Plaintiff now moves to stay that arbitration.  Likewise, Defendant Aon moves to stay this action, or, in the alternative, to dismiss the claims against it.  Defendant QBE also moves to dismiss the claims against it based on (1) insufficient service of process, (2) lack of personal jurisdiction, and (3) failure to state a claim upon which relief can be granted.  The Court will now discuss each Motion in turn.

## II.   DEFENDANT PRAETORIAN'S MOTION TO COMPEL ARBITRATION (Doc. 11)  AND PLAINTIFF'S MOTION TO STAY ARBITRATION (Doc. 34)

Pursuant to 9 U.S.C. § 4, Defendant Praetorian moves the Court to enforce the arbitration clauses in the Quota Share Agreement and the Aggregate Contract and compel Plaintiff to submit to arbitration all claims alleged against Defendant Praetorian in the Complaint.  Praetorian argues that Article XVII of the Quota Share Agreement and Article XIX of the Aggregate Contract provide that the Parties must arbitrate any disputes arising out of those agreements.

Article XVII of the Quota Share Agreement, entitled "Arbitration," and Article XIX of the Aggregate Contract, entitled "Arbitration" have identical provisions that provide, in part:

A.      As a condition precedent to any right of action hereunder, any dispute arising out of this Contract shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire, meeting in San Francisco, California unless otherwise agreed.

. . .

D.      . . . . The majority decision of the board shall be final and binding upon all parties to the proceeding.

. . .

G.      The decision of the board may be entered in any court of competent jurisdiction.

(Doc. 7-1, Exhibit A at Article XVII & Exhibit B at Article XIX). Praetorian argues that the claims for breach of contract and breach of the duty of good faith and fair dealing alleged against Praetorian clearly "arise" out of the Quota Share Agreement and the Aggregate Contract and, therefore, must be litigated pursuant to the arbitration provisions in those contracts.

In response, Plaintiff argues that its claims do not "arise" out of the Quota Share Agreement or the Aggregate Contract. Rather, Plaintiff argues, its claims arise out of the Commutation Agreement. Plaintiff argues that the fact that its claims arise out of the Commutation Agreement is proven, in part, by its request for a declaratory judgment that the Commutation agreement is invalid. Essentially, Plaintiff argues, this suit does not arise from the breach of the Quota Share Agreement or Aggregate Contract, but rather arises from a dispute as to the validity of the Commutation Agreement.

Plaintiff also argues that the arbitration clauses in the Quota Share Agreement and the Aggregate Contract only provide for arbitration "unless otherwise agreed." Plaintiff argues that, on several occasions, the Parties have "otherwise agreed" to litigate disputes arising out of those contracts, rather than arbitrate them. Plaintiff argues that this "agreement" is evidenced by (1) provisions in a "Tolling Agreement" entered into between Plaintiff and Praetorian in November 2010 (the "Tolling Agreement")[5] that state that "[t]his Agreement

---

[5] In the Tolling Agreement, Plaintiff and Praetorian agreed to toll the statute of limitations for claims arising out of or relating to the Quota Share Agreement and the

1   shall not preclude the commencement or prosecution . . . of any litigation, or the assertion

2   of any rights, claims, causes of action or remedies, by an party to the Agreement against the

3   other party to the Agreement; provided, however, that no litigation or other proceeding shall

4   be commenced during the term of this Agreement . . ." (Doc. 15-3, Exhibit E at ¶ 4); and (2)

5   a mandatory litigation provision in a 2011 Commutation and Release Agreement (Doc. 15-3,

6   Exhibit L) (the "Release Agreement").  Plaintiff also argues that, in the Parties' efforts to

7   settle these matters, Praetorian never discussed arbitration as a requirement for dispute

8   resolution and, thus, waived its right to arbitration.

9        For the reasons that follow, the Court finds that Plaintiff must arbitrate its claims

10   against Defendant Praetorian pursuant to the arbitration clauses in the Quota Share

11   Agreement and the Aggregate Contract (collectively the "1991 Agreements").  The Court

12   will now discuss each of Plaintiff's arguments that these claims are not subject to arbitration

13   in turn.

14        **A.**     **Whether Plaintiff's Claims Arise out of the Quota Share Agreement and the Aggregate Contract**

15

16        Plaintiff argues that its claims do not "arise" out of the Quota Share Agreement or the

    Aggregate Contract, but rather arise out of the Commutation Agreement.  Plaintiff argues that

17   its breach of contract and breach of the duty of good faith and fair dealing claims do not arise

18   out of the 1991 Agreements because the parties do not dispute the applicability of the 1991

19   Agreements, but rather dispute the Commutation Agreement's validity.  (Doc. 14 at 11).

20   Plaintiff also argues that its claim for breach of the duty good faith and fair dealing cannot

21   arise out of any contract because it is imposed on insurers by law.

22        Plaintiff relies on *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914 (9th Cir.

23   2011) to support its argument that the claims in this case do not arise out of the Quota Share

24   Agreement or the Aggregate Contract.  In *Cape Flattery*, the Ninth Circuit Court of Appeals

25   held that language in an arbitration agreement applying to claims that "arise under" the

26

27   ————————————————

28   Aggregate Contract.  (*See* Doc. 15-3 at Exhibit E).

contract are interpreted more narrowly than arbitration provisions that encompass claims arising under or relating to the contract. 647 F.3d at 922. However, the Court also construed the phrase "arising hereunder" as intended to cover disputes "relating to the interpretation and performance of the contract itself." *Id.* at 922 (quoting *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)).

Plaintiff's argument that the claims in this case do not arise out of the 1991 Agreements, but rather arise out of a dispute as to the validity of the Commutation Agreement is belied by the allegations in Plaintiff's Complaint. Plaintiff alleges that Praetorian breached the Quota Share Agreement and the Aggregate Contract when it entered into the Commutation Agreement. The fact that a breach may not have occurred but for Praetorian entering into the Commutation Agreement does not change the fact that the breach of contract claim in this case relates to and turns on the interpretation of and performance under the Quota Share Agreement and the Aggregate Contract. Likewise, Plaintiff's claim that Praetorian breached the duty of good faith and fair dealing, as alleged in the Complaint, is dependent on interpretation of the Quota Share Agreement and the Aggregate Contract.

The fact that part of the relief Plaintiff requests, a declaratory judgment that the Commutation Agreement is invalid, relates to the Commutation Agreement does not change the fact that Plaintiff's claims arise out of Defendant Praetorian's alleged breach of the Quota Share Agreement and the Aggregate Contract. Accordingly, Plaintiff's claims against Defendant Praetorian arise out of the Quota Share Agreement and the Aggregate Contract and are subject to the arbitration provisions of those contracts, unless the Parties otherwise agreed to waive their rights to arbitration or waived their right to arbitration by inconsistent conduct.

**B.      Whether Plaintiff and Praetorian Agreed not to Arbitrate this Dispute**

As noted above, both the Quota Share Agreement and the Aggregate Contract provide that "any dispute arising out of this Contract shall be submitted to the decision of a board of arbitration . . . unless otherwise agreed." Plaintiff argues that it is clear that Plaintiff and

1   Praetorian agreed not to litigate the claims against Praetorian in this case based on provisions
2   in the Tolling Agreement and Provisions in the Release Agreement.

3                          **1.      Provisions of the Tolling Agreement**

4        Plaintiff argues that the Parties agreed to litigate this dispute in the Tolling
5   Agreement.  Plaintiff argues that this agreement is evidenced by the language of the Tolling
6   Agreement, which solely refers to litigation and not arbitration.  Plaintiff further argues that
7   the Tolling Agreement demonstrates that the Parties agreed to litigate the dispute because the
8   only reason to toll the statute of limitations is for litigation and tolling the statute of
9   limitations would not be applicable in arbitration.

10        In response, Defendant Praetorian argues that the language of the agreement does not
11  limit future dispute resolution to litigation, but rather seeks to toll the statute of limitations
12  for any future dispute resolution, including arbitration.  Defendant Praetorian also contends
13  that statute of limitation issues can be addressed by an arbitrator and, thus, Plaintiff's
14  argument that the very existence of the Tolling Agreement demonstrates that the Parties
15  intended to litigate the dispute is erroneous.

16        The Court agrees with Defendant Praetorian.  There is no language in the Tolling
17  Agreement that suggests that the Parties intended to expressly agree to waive their rights to
18  arbitration.  Further, while the Tolling Agreement does contain language referencing tolling
19  the limitations period with regard to litigation, the language does not limit such tolling solely
20  to litigation.  For instance, the Tolling agreement states "no litigation *or other proceeding*
21  shall be commenced during the terms of this Agreement."  (Doc. 15-3, Exhibit E at ¶ 4)
22  (emphasis added).  Accordingly, Plaintiff's argument that the sole intention of the Tolling
23  Agreement was to toll *litigation*, thus evidencing the Parties' intent only to litigate their
24  dispute, is contradicted by the language of the Tolling Agreement.  Further, the Tolling
25  Agreement appears to envision a possible arbitration between the Parties, as it provides,
26  "[t]he Agreement may be disclosed to a Court in a lawsuit brought to enforce its terms or in
27  any arbitration proceeding in which it is relevant."  (*Id.* at ¶ 6).

28

Further, Plaintiff has cited to no cases and the Court is aware of no cases that hold that a statute of limitations defense would not apply in arbitration proceedings.  On the other hand, Defendant Praetorian has cited to two United States Supreme Court decisions and a Ninth Circuit Court of Appeals decision that suggest it is appropriate for an arbitrator to determine a statute of limitations issue. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002), *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921-22 (9th Cir. 2009).

Based on the foregoing, the Tolling Agreement does not evidence any agreement of the Parties to waive their right to arbitration as provided for in the 1991 Agreements.

## 2.     The "Mandatory Litigation Provision" in the Release Agreement

Plaintiff next argues that the Parties agreed to litigate this dispute in the Release Agreement.  In 2011, Plaintiff and Defendant Praetorian entered into a Commutation and Release Agreement.  Article VI of this Release Agreement contains a "Dispute Resolution" provision, which provides that

> [a]ny disputes between the parties that arise out of or in any way relate to this Agreement (including, but not limited to, any disputes regarding the meaning or the scope of the release contained herein) shall be tried in a state or federal court located in Los Angeles, California, which courts shall have exclusive jurisdiction over lawsuits to enforce the terms and conditions of this Agreement and to resolve disputes of any type or nature arising out of or relating in any way to this Agreement.

(Doc. 15-3, Exhibit  L at Article VI).

The Release Agreement also contains a section entitled "Excluded Contracts and Claims," which provides  "[n]otwithstanding anything else contained in this Agreement, the following Contracts, claims and defenses are not settled, resolved, commuted, waived, or otherwise affected by this Agreement."  (*Id.* at Article II, ¶ 5).  The 1991 Agreements are listed as two of the Excluded Contracts.  (*Id.*).  The Dispute Resolution Article (Article VI) further provides that "[t]his Article shall have no application nor admissibility in any dispute on the merits pertaining to Excluded Contracts and Claims."  (*Id.* at Article VI).

Plaintiff claims that its breach of contract claims against Praetorian "relate in any way" to the Release Agreement as contemplated by the Dispute Resolution provision in the Release Agreement "since they relate in any way to payments owing under the 1991 Agreements." (Doc. 14 at 13).

In response, Defendant Praetorian argues that this case does not relate in any way to the Release Agreement because the 1991 Agreements are clearly excluded contracts not subject to the Dispute Resolution Provision in Article VI, as that Article expressly precludes application of that Article to Excluded Contracts and Claims.

The Court agrees with Defendant Praetorian. First, there is no express agreement in the Release Agreement to waive the Parties' right to arbitration as contemplated by the 1991 Agreements. Further, this dispute does not appear to arise out of or relate in any way to the Release Agreement. Plaintiff appears to argue that this case relates to the Release Agreement because the Release Agreement mentions the 1991 Agreements when it lists them as "Excluded Contracts and Claims." This interpretation ignores the express language of the Release Agreement which clearly excludes the application of Article VI's Dispute Resolution Provision to the 1991 Agreements.

Accordingly, the Release Agreement does not evidence any agreement of the Parties to waive their right to arbitration as provided for in the 1991 Agreements.

## C. Whether Praetorian Waived its Right to Arbitration through Inconsistent Conduct

Plaintiff also argues that, in the Parties' efforts to settle these matters, Praetorian never discussed arbitration as a requirement for dispute resolution and thus, waived its right to enforce the arbitration provisions in the Quota Share Agreement and the Aggregate Contract.

> The right to arbitration, like any other contract right, can be waived. *See Van Ness Townhouses v. Mar Indus. Corp.,* 862 F.2d 754, 758-59 (9th Cir. 1988). However, we have emphasized that "waiver of the right to arbitration is disfavored because it is a contractual right, and thus 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Id.* at 758 (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1025 (11th Cir. 1982)). To demonstrate waiver of the

1
2
3

> right to arbitrate, a party must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.,* 791 F.2d 691, 694 (9th Cir. 1986).

4    *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009)

5         It is unclear to the Court how Praetorian's failure to discuss arbitration in settlement

6    discussions suggests that Praetorian waived its right to enforce the arbitration provisions in

7    the Quota Share Agreement and Aggregate Contract.  Praetorian never denied that the

8    arbitration clauses existed, nor has Plaintiff presented any facts that Praetorian suggested that

9    litigation was the only option for the dispute resolution of the claims in this case.  Defendant

10   Praetorian's mere failure to discuss arbitration and its occasional reference to "litigation,"

11   do not constitute "acts inconsistent" with the right to arbitration.  Accordingly, Plaintiff has

12   failed to carry its heavy burden of proof in showing that Defendant Praetorian waived its

13   right to arbitration.

14            **D.        The Motion to Compel is Granted**

15        Based on the foregoing, Plaintiff must arbitrate the claims raised in its Complaint

16   against Defendant Praetorian and Defendant Praetorian's Motion to Compel is granted.

17            **E.        Additional Issues Raised in Plaintiff's Motion to Stay Arbitration**

18        On February 28, 2012, Defendant Praetorian served an arbitration demand on

19   Plaintiff.  In addition to the issues raised in this lawsuit, the arbitration demand also seeks

20   rescission of reinsurance contracts entered into between Praetorian and Repwest based on

21   Repwest's (and its agent's) alleged failure to provide accurate loss information to Praetorian

22   during the period that the reinsurance contracts were in effect.  Specifically, Praetorian

23   contends that the failure to provide accurate loss information "entitle[s] Praetorian to rescind

24   all the reinsurance treaties that it entered into in reliance on the fraudulently set reserves and

25   all reinsurance coverage for insurance contracts that were entered into after the

26   misrepresentations commenced."  (Doc. 34-1, Exhibit A at 2).

27        Plaintiff argues that this claim is not arbitrable because it does not arise out of the

28   1991 Agreements.  In response, Defendant Praetorian argues that this claim does arise out

of the 1991 Agreements because "resolution of these claims will require the interpretation of the contracts and the evaluation of Repwest's performance under the contracts." (Doc. 42 at 8).

At the outset, the Court notes that both Parties refer to this claim as Defendant Praetorian's "rescission claim." Because rescission is not a claim, but rather a remedy, the Court has had a difficult time determining the underlying legal theory that is the basis for this claim. Defendant Praetorian included an underlying factual basis for its "rescission claim" in both its Arbitration Demand (Doc. 34-1 at Exhibit A) and its Response to Plaintiff's Motion to Stay (Doc. 42). However, Defendant Praetorian fails to state the legal theory or theories that it contends arise from this factual basis.

Plaintiff has independently determined, based on its reading of the Arbitration Demand, that Praetorian's legal theories are negligent misrepresentation and fraudulent inducement. (*See* Doc. 45). While this is a fair reading of Defendant Praetorian's Arbitration Demand, it also appears that Defendant Praetorian has attempted to frame a breach of contract claim or a related claim by arguing that the "resolution of these claims will require the interpretation of the contracts and the evaluation of Repwest's performance under the contracts." However, Defendant Praetorian fails to point to any specific provision(s) of the 1991 Agreements that Plaintiff has allegedly breached. Accordingly, the Court analyzes whether there is a claim on which a rescission remedy would be appropriate that arises out of the 1991 Agreements.

"[U]nder an arbitration agreement covering disputes 'arising under' the agreement, only those disputes 'relating to the interpretation and performance of the contract itself' are arbitrable." *Cape Flattery*, 647 F.3d at 924 (quoting *Mediterranean Enters., Inc. v. Ssangyong Constr. Co.*, 708 F.2d 1458, 1464 (9th Cir. 1983)). Further, "when a tort claim constitutes an 'independent wrong from any breach' of the contract it 'does not require interpretation of the contract and is not arbitrable'" and a "tort claim is not arbitrable just because it would not have arisen 'but for' the parties' agreement." *Id.* (quoting *Tracer Research Corp. v. Nat'l Envl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)).

1    Based on the information provided by the Parties, in this case, claims for negligent
2   misrepresentation and fraudulent inducement do not turn on interpretation of any clause in
3   the contract. It is not clear whether these claims would turn on Repwest's performance under
4   the contract. However, because Praetorian has failed to point to any provisions or language
5   in the contract that demonstrate that Repwest failed to perform under the contract in a manner
6   that would give rise to claims for negligent misrepresentation and fraudulent inducement, the
7   Court finds that these claims do not turn on Repwest's performance under the contract.
8   Accordingly, to the extent Praetorian is trying to arbitrate tort claims for negligent
9   misrepresentation and fraudulent inducement, these claims do not "arise out" of the contract
10  and Plaintiff is not required to arbitrate these claims.

11    Nonetheless, to the extent that Defendant Praetorian seeks rescission based on a
12  breach of the 1991 Agreements, such a breach would arise out of the contracts and would be
13  arbitrable. Because it is not clear what legal theories Defendant Praetorian seeks to assert
14  in the arbitration that would entitle it to rescission, the Court cannot foreclose the possibility
15  that some legal theories that would entitle Defendant Praetorian to rescission that would arise
16  out of the contract. However, Defendant Praetorian is precluded from arbitrating claims for
17  negligent misrepresentation and fraudulent inducement because such claims are outside the
18  scope of the arbitration agreement. Thus, Plaintiff Repwest's Motion to Stay Arbitration is
19  granted to the extent it seeks to prohibit Defendant Praetorian from arbitrating claims for
20  fraudulent inducement and negligent misrepresentation.

21    **III.    DEFENDANT AON'S MOTION TO STAY OR DISMISS (Doc. 40)**

22    As discussed above, in its Complaint, Plaintiff alleges that Defendant Aon breached
23  its obligations under the Broker Contract by soliciting and negotiating the Commutation
24  Agreement between Defendant Praetorian and Conestoga (Count VI). As a result, Plaintiff
25  seeks a declaratory judgment (Count V) as to Defendant Aon that (1) Aon's conduct
26  constituted a breach of contract that existed between Aon and Repwest pursuant to Arizona
27  Revised Statutes section 20-486.02, compensatory damages, reasonable attorneys' fees and
28  costs, and pre-judgment and post-judgment interest.

1    Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Aon moves to

2    dismiss Plaintiff's claims against it.  Alternatively, pursuant to 9 U.S.C. § 3, Defendant Aon

3    requests that the Court stay this case pending the completion of Plaintiff and Praetorian's

4    arbitration proceedings.

5    Defendant Aon argues that Plaintiff has failed to state a claim upon which relief can

6    be granted in its breach of contract claim (Count VI) against Aon because Plaintiff has failed

7    to allege a specific contract, the terms of that contract that Aon allegedly breached, the

8    written standards that Aon allegedly failed to follow or how Plaintiff has been damaged by

9    such breach.  Defendant Aon also argues that Plaintiff's request for declaratory judgment is

10   inappropriate because it does not seek to declare the Parties' future rights, but rather seeks

11   a declaration as to past conduct and is duplicative of Plaintiff's breach of contract claim.

12   To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the

13   requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and

14   plain statement of the claim showing that the pleader is entitled to relief," so that the

15   defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*

16   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S.

17   41, 47 (1957)). Also, a complaint must contain sufficient factual matter, which, if accepted

18   as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

19   678 (2009).

20   "In an action on a contract plaintiff has the burden of proof to show, 1) a contract, 2)

21   a breach, and 3) damages." *Thunderbird Metallurgical, Inc. v. Ariz. Testing Labs.*, 423 P.2d

22   124, 126 (Ariz. Ct. App. 1967) (internal citation omitted).  Defendant Aon argues that

23   Plaintiff's allegations that Defendant Aon breached unidentified provisions of an unidentified

24   contract and failed to comply with certain standards pursuant to Arizona Revised Statutes §

25   20-486.02 are too conclusory to state a claim for breach of contract.

26   In response, Plaintiff argues that Defendant Aon is familiar with contracts it is

27   required to enter into pursuant to Arizona Revised Statutes section 28-486.02 and knows that

28   it had a contract with Plaintiff and, thus, Defendant Aon has notice of Plaintiff's claims.

1    In its Complaint, Plaintiff has failed to plead enough facts regarding an alleged

2    contract between Plaintiff and Defendant Aon to state a claim for breach of contract that is

3    plausible on its face.  Plaintiff must allege the existence of a contract, the terms of the

4    contract that Defendant has breached, and the damages suffered from that breach.  Plaintiff

5    has not made these allegations with any detail, but rather makes conclusory assertions that

6    Defendant Aon breached a contract it had with Plaintiff.  Accordingly, Plaintiff's claim for

7    breach of contract against Defendant Aon (Count VI) will be dismissed.

8    It appears from Plaintiff's Response to Defendant Aon's Motion to Dismiss that

9    Plaintiff may be able to plead facts that state a claim for breach of contract.  Plaintiff has

10   requested leave to amend should the Court grant Aon's Motion to Dismiss.  District courts

11   should grant leave to amend when dismissing a case for failure to state a claim, "unless the

12   court determines that the pleading could not possibly be cured by the allegations of other

13   facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*,

14   58 F.3d 494, 497 (9th Cir. 1995)).  There is a "longstanding rule that '[l]eave to amend

15   should be granted if it appears at all possible that the plaintiff can correct the defect.'"  *Id.*

16   at 1129 (quoting *Balistreri v. Pac. Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)).  Because

17   it appears that Plaintiff could plead facts to state a plausible claim for breach of contract

18   against Defendant Aon, the Court will allow Plaintiff to amend its Complaint to properly

19   plead claims against Defendant Aon.

20   Aon also requests that the Court dismiss Plaintiff's claim for declaratory judgment

21   (Count V) because it is duplicative of Plaintiff's breach of contract claim against Aon and

22   does not seek to determine the future rights of the Parties, but rather seeks a declaration

23   regarding past conduct that will already be resolved in the lawsuit.  Indeed, Plaintiff seeks

24   a declaration that Aon's conduct constituted a breach of contract that existed between Aon

25   and Repwest pursuant to Arizona Revised Statutes section 20-486.02.  Declaratory judgment

26   is a remedy that is dependent on Plaintiff's success on an underlying cause of action.

27   Because the Court has dismissed Plaintiff's only cause of action against Defendant Aon, its

28   claim for declaratory relief must also be dismissed.

1    Accordingly, Defendant Aon's Motion to Dismiss is granted and Plaintiff will have

2    20 days to file an amended Complaint.

3    **IV.    DEFENDANT QBE'S MOTION TO DISMISS (Doc. 16)**

4    Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), 12(b)(5), and

5    12(b)(6), Defendant QBE moves to dismiss the claims against it based on insufficient process

6    and insufficient service of process, lack of personal jurisdiction, and failure to state a claim

7    upon which relief can be granted.

8    **A.    Personal Jurisdiction**

9    Defendant QBE argues that this Court lacks personal jurisdiction over it because QBE

10   lacks sufficient minimum contacts with Arizona to subject it to this Court's jurisdiction.  In

11   response, Plaintiff argues that QBE's actions regarding the matters outlined in the Complaint

12   establish that the Court has personal jurisdiction over QBE.  In the alternative, Plaintiff

13   requests jurisdictional discovery to show that QBE, or one of its related entities is the

14   properly named party to this action.

15   **1.    Legal Standard**

16   Plaintiff bears the burden of establishing personal jurisdiction. *See Schwarzenegger*

17   *v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911

18   F.2d 1357, 1361 (9th Cir. 1990)). A defendant may move prior to trial to dismiss a complaint

19   for lack of personal jurisdiction. Fed.R.Civ.P. 12(b) (2); *see, e.g., Data Disc, Inc. v. Sys.*

20   *Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citing Rule 12(b)(2)). When a defendant

21   does so, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise,

22   supporting personal jurisdiction'" over the defendant. *Cummings v. W. Trial Lawyers Assoc.*,

23   133 F.Supp.2d 1144, 1151 (D. Ariz. 2001) (quoting *Scott v. Breeland*, 792 F.2d 925, 927 (9th

24   Cir. 1986)). Conflicts over statements contained in the plaintiff's and defendant's affidavits

25   "must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (citing *AT&T*

26   *v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

27   Because no statutory method for resolving the personal jurisdiction issue exists, the

28   district court determines the method of its resolution.  *See Data Disc*, 557 F.2d at 1285

(citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)).  A district court may allow discovery to help it determine whether it has personal jurisdiction over a defendant.  *See id.* at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

In the absence of an evidentiary hearing on the issue of personal jurisdiction, Plaintiff must only make "a prima facie showing of jurisdictional facts through the submitted materials" in order to avoid dismissal for lack of personal jurisdiction. *Data Disc*, 557 F.2d at 1285.

Further, because no applicable federal statute governing personal jurisdiction exists, Arizona's long-arm statute applies to this case. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995) (citing *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)). Arizona's long-arm statute provides for personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution.  Ariz. R. Civ. P. 4.2(a);[6] *see also Uberti v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995), cert. denied, 516 U.S. 906 (1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution").

Absent traditional bases for personal jurisdiction (i.e., physical presence, domicile, and consent), the Due Process Clause requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Int'l Shoe*, 326 U.S. at 316). The Due Process Clause protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or

---

[6] Arizona Rule of Civil Procedure. 4.2(a) provides, in pertinent part, "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States." Ariz. R. Civ. P. 4.2(a).

relations.'" *Omeluk v. Langsten Slip & Batbyggeri*, 52 F.3d 267, 269–70 (9th Cir. 1995)

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985)).

> By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*Id.* at 270 (alteration in original) (quoting *Burger King*, 471 U.S. at 472).

"In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on 'the relationship among the defendant, the forum, and the litigation '" *Brink v. First Credit Res.*, 57 F.Supp.2d 848, 860 (D. Ariz. 1999) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  If a court determines that a defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the court must exercise either "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–15 nn. 8–9 (1984) (internal citations omitted); *Doe*, 112 F.3d at 1050. The nature of the defendant's contacts with the forum state will determine whether the court exercises general or specific jurisdiction over the defendant. *Helicopteros*, 466 U.S. at 415.

### a.    General Jurisdiction

A court may assert general jurisdiction over a nonresident defendant "[i]f the defendant's activities in the state are 'substantial' or 'continuous and systematic,' . . . even if the cause of action is unrelated to those activities." *Doe*, 112 F.3d at 1050–51 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986)); *see Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995). There is a "fairly high standard" in establishing that defendant's activities in the state are substantial. *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (internal citations omitted). This requires that "defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal

citation omitted). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.* (internal citation omitted).

Plaintiff has failed to show that QBE has "substantial" or "continuous and systematic" contacts with Arizona, so that an exercise of general jurisdiction would be appropriate.[7] Plaintiff has not presented any activities that suggest that QBE has a physical presence or has something akin to a physical presence in Arizona. Rather, Plaintiff's entire argument that this Court has personal jurisdiction over Defendant QBE appears to be based on the following facts: (1) Bruce Carlino, Head of Claims of QBE Insurance, attended a September 22, 2010 meeting in San Diego, California where the Commutation agreement was discussed; (2) QBE attended a February 17, 2011 meeting in Chicago, Illinois where the 1991 Agreements and the Commutation Agreement were discussed; (3) an August 20, 2008 letter from a lawyer in New York on QBE the Americas letterhead was sent to Plaintiff in Phoenix, Arizona demanding that a letter of credit be issued for Defendant Praetorian in reference to a 2001 agreement (the "2001 agreement") entered into between Plaintiff and Defendant Praetorian; (4) Defendant Praetorian was listed as "a Member of QBE the Americas" in the 2001 agreement and (5) QBE never refuted a statement, made in a responsive letter to the August 20, 2008 letter, made by Plaintiff that the August 20, 2008 letter came from "QBE (apparently acting on behalf of Praetorian)").

---

[7]     The Court notes that Plaintiff has made no attempt to explain to the Court whether it believes the Court has "general" personal jurisdiction over QBE or "specific" personal jurisdiction over QBE or both. Rather, Plaintiff makes conclusory assertions that the Court has personal jurisdiction over QBE without citing to relevant law regarding personal jurisdiction.

Notably, while Plaintiff makes several assertions that it does not attempt to hold both QBE and Praetorian liable for the same wrongdoing,[8] Plaintiff fails to point to any allegations in the Complaint about any direct conduct by QBE (aside from the five facts listed above) relating to the allegations in the Complaint.  Plaintiff does not dispute the Declaration of Bruce Carlino, Senior Vice President for Defendant Praetorian Insurance Company and Senior Vice President/Head of Claims for QBE Reinsurance Corporation, that Defendant QBE Insurance Group, Ltd. is an Australian company with its principal place of business in Sydney, Australia, with no offices or employees in the United States of America.  (*See* Doc. 16-1 at ¶ 2).    Further, Plaintiff does not dispute that Defendant QBE is not authorized or licensed to do business or to write insurance in any state in the United States.  (*Id.*).

Plaintiff has provided the Court with no facts that suggest Defendant QBE has a physical presence in Arizona or has done anything that approximates a physical presence in Arizona.  Even if the letter to Plaintiff on "QBE the Americas" letterhead were from Defendant QBE (which Defendant QBE disputes), this would not be the type of communication that would approximate physical presence.  *See, e.g.*, *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th Cir.1984) (Arizona court did not have general personal jurisdiction over Defendant who solicited a distributorship agreement in Arizona, visited

_____

[8]  At times, it appears that Plaintiff argues that QBE is liable as the alter ego or agent of Defendant Praetorian. *See* Doc. 29 at 7 (arguing that personal jurisdiction is clear because QBE never disputed that it sent a letter on behalf of Defendant Praetorian).  However, Plaintiff also appears to specifically disavow such a theory. *See id.* at 8 ("Repwest is not attempting to hold both QBE and Praetorian/ICH liable for the same wrongdoing).  Without some showing that QBE's subsidiaries are the alter egos or agents of QBE, a simple corporate affiliation does not confer personal jurisdiction on a parent company. *See Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011) (Even if the Court has personal jurisdiction over a subsidiary, such personal jurisdiction will not be imputed to a parent holding company unless (1) the parent holding company is merely an alter ego of the subsidiary or (2) the subsidiary is the general agent of the parent in the forum).  Plaintiff has presented no argument that there is an alter ego or agency relationship between Defendant QBE and Defendant Praetorian, so that Defendant Praetorian's contacts with Arizona could be imputed to Defendant QBE.  Accordingly, the Court cannot find general personal jurisdiction over QBE under an alter ego or agency theory.

1   Tucson, Arizona a number of times, entered into purchase agreements with Plaintiff that
2   contained an Arizona choice of law and forum provision, purchased parts from Plaintiff in
3   Tucson, Arizona, and sent many letters and telexes and made numerous telephone calls to
4   Tucson).

5     Because QBE's activities in Arizona are not sufficiently substantial, this Court cannot
6   assert general personal jurisdiction over QBE based on its contacts with Arizona.

7           **b.**  **Specific Jurisdiction**

8     If a defendant does not have substantial or continuous and systematic contacts with
9   the forum state, then the court must determine whether the defendant has had sufficient
10  contacts with the forum state such that the exercise of specific jurisdiction over the defendant
11  would not offend the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316; *Core–Vent*, 11
12  F.3d at 1485. The Ninth Circuit applies a three-prong test to determine whether the
13  defendant's contacts with the forum state are sufficient to subject him to the state's specific
14  jurisdiction. *Schwarzenegger*, 374 F.3d at 802. Under this three-prong test, specific
15  jurisdiction exists only if: (a) the nonresident defendant purposefully directs activities or
16  consummates some transaction with the forum of the plaintiff, or performs some act by
17  which he personally avails himself of the privilege of conducting activities in that forum; (b)
18  the claim arises out of or relates to the defendant's forum-related activities; and (c) the
19  exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable.
20  *Id.*; *see, e .g., Bancroft*, 223 F.3d at 1086 (citing *Cybersell, Inc. v. Cybersell, Inc.* 130 F.3d
21  414, 416 (9th Cir.1997)); *see also Burger King*, 471 U.S. at 472–73.

22          **i.**  **Purposeful Availment**

23    In discussing the specific jurisdiction test, the United States Supreme Court
24  emphasized long ago that "it is essential in each case that there be some act by which the
25  defendant purposefully avails itself of the privilege of conducting activities within the forum
26  State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S.
27  235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319).

28

1    The Ninth Circuit has held that a district court should apply different specific

2    jurisdiction tests to contract and tort cases. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621

3    (9th Cir.1991) (stating that in determining whether court has specific jurisdiction over

4    defendant, "[i]t is important to distinguish contract from tort actions"); *Ziegler*, 64 F.3d at

5    473.

6    In cases arising out of contractual relationships, including those involving related tort

7    claims, the Ninth Circuit applies the "purposeful availment" test enunciated in *Hanson*.

8    Because Plaintiff's claims sound in contract, the Court will apply the purposeful availment

9    test in analyzing whether there is specific jurisdiction over QBE. *See, e.g.*, *Roth*, 942 F.2d

10    at 621 (applying purposeful availment test in breach of contract action).

11    In cases arising out of a contractual relationship, a "contract alone does not

12    automatically establish the requisite minimum contacts necessary for the exercise of personal

13    jurisdiction. '[P]rior negotiations and contemplated future consequences, along with the

14    terms of the contract and the parties' actual course of dealing' are the factors to be

15    considered. The foreseeability of causing injury in another state is not a sufficient basis on

16    which to exercise jurisdiction." *Gray*, 913 F.2d at 760 (internal citations omitted) (quoting

17    *Burger King*, 471 U.S. at 474, 478–79). A defendant has engaged in affirmative conduct and

18    thereby "purposely availed himself of the benefits of a forum if he has deliberately 'engaged

19    in significant activities within a State or has created "continuing obligations" between

20    himself and the residents of the forum.'" *Id.* (quoting *Burger King*, 471 U.S. at 475–76); *see*

21    *Cybersell, Inc.*, 130 F.3d at 417 (stating that "the 'purposeful availment' requirement is

22    satisfied if the defendant has taken deliberate action within the forum state or if he has

23    created continuing obligations to forum residents" and "[i]t is not required that a defendant

24    be physically present within, or have physical contacts with, the forum, provided that his

25    efforts 'are purposefully directed' toward forum residents.") (citing *Ballard v. Savage*, 65

26    F.3d 1495, 1498 (9th Cir. 1995)).

27    The only action directly attributed to Defendant QBE in the Complaint is that "[u]pon

28    information and belief, QBE purchased the assets and liabilities of Defendant Praetorian in

December 2006 for $800 million." (Doc. 7 at ¶ 4). However, this allegation is directly refuted by the Declaration of Bruce Carlino. (*See* Doc. 16-1 at ¶ 7 ("QBE Group never purchased the assets and liabilities of [Defendant Praetorian]"). Mr. Carlino avows that, on May 31, 2007, QBE Reinsurance Corporation purchased Defendant Praetorian. (*Id.* at ¶ 4). Prior to this transaction, QBE Reinsurance Corporation had no ownership interest, direct or indirect, in Defendant Praetorian. (*Id.*). On March 31, 2010, Praetorian was merged into QBE Holdings, Inc. and is owned by QBE Holdings, Inc., who is owned by QBE Holdings (Americas) Pty Limited, who is owned by Defendant QBE. Accordingly, Defendant argues that Defendant QBE is solely a distant parent of Defendant Praetorian and has had no direct involvement in the facts giving rise to the claims in this case and thus, the Court lacks personal jurisdiction over Defendant QBE. Plaintiff has offered no controverting testimony to the facts as asserted by Mr. Carlino. Because Plaintiff has failed to point to any direct action by Defendant QBE (except for QBE acquiring Defendant Praetorian's assets and liabilities, which is refuted by Mr. Carlino), the Court cannot find that QBE purposefully availed itself in Arizona. Accordingly, Plaintiff has failed to carry its burden of making a prima facie showing that the Court has specific jurisdiction over QBE.

Plaintiff requests jurisdictional discovery to "either confirm QBE is the appropriate entity in name" or to discover which QBE subsidiary is appropriately named in this lawsuit. (Doc. 29 at 9).

> Courts should deny discovery requests where the plaintiff fails to show "that further discovery would elucidate the facts necessary to prove that the court has personal jurisdiction." *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.,* 566 F.3d 1012, 1023 (Fed.Cir. 2009) (denying discovery request because "[plaintiff] provided the district court with no reasons for its request or particular areas to which discovery would be directed."). "Such a showing is especially important where . . . the defendant enters declarations into evidence specifically denying certain jurisdictional allegations." *Id.*

*MMI, Inc. v. Baja, Inc.*, 743 F.Supp.2d 1101, 1113 (D. Ariz. 2010).

In this case, it is not clear to the Court the nature of Plaintiff's legal theory for any possible claims against Defendant QBE. As discussed above, in the absence of a claim or

1   any showing that QBE is the agent or alter ego of Defendant Praetorian, which Plaintiff

2   appears to deny, or any facts that QBE (or any other QBE entity other than Praetorian) acted

3   directly to give rise to the claims in this case, the Court cannot exercise personal jurisdiction

4   over Defendant QBE.

5       Plaintiff has failed to propose any method or manner of discovery or the nature of

6   such discovery that would allow it to prove facts supporting personal jurisdiction over

7   Defendant QBE or any other QBE-related entity.  Accordingly, Plaintiff has failed to show

8   that "further discovery would elucidate the facts necessary to prove that the court has

9   personal jurisdiction."  As such, Defendant QBE should not have to engage in further

10  discovery when Plaintiff has shown that its claims are against Defendant Praetorian and has

11  made no showing that some other activity by QBE or any other QBE subsidiary or holding

12  company gave rise to Plaintiff's claims in this lawsuit.  Therefore, discovery on personal

13  jurisdiction will not be permitted.

14      Accordingly, because the Court lacks personal jurisdiction over Defendant QBE, the

15  Court will grant QBE's Motion to Dismiss and the Court need not address QBE's alternative

16  bases for dismissal.

17      **V.   CONCLUSION**

18      Based on the foregoing,

19      **IT IS ORDERED** that Defendant Praetorian's Motion to Dismiss or Stay Proceedings

20  and Compel Arbitration (Doc.  11) is granted in part and denied in part as follows:

21       **IT IS ORDERED** that Defendant Praetorian's Motion to Dismiss and Compel

22  Arbitration is granted.  **IT IS FURTHER ORDERED** denying Defendant Praetorian's

23  alternative Motion to Stay as moot.  Plaintiff's claims against Defendant Praetorian are

24  dismissed without prejudice to the Parties' arbitrating those claims.  Plaintiff and Defendant

25  Praetorian are **ORDERED** to proceed to arbitration pursuant to the 1991 Agreements.

26      **IT IS FURTHER ORDERED** that Defendant Aon Benfield, Inc.'s Motion to

27  Dismiss, or in the Alternative Motion to Stay (Doc. 40) is granted in part and denied in part

28  as follows:

1    Plaintiff's claims against Defendant Aon Benfield, Inc. (Counts VI and V) are
2    dismissed.  Plaintiff may file an amended Complaint within 20 days of the date of this Order.
3    If Plaintiff fails to file an amended Complaint within 20 days of the date of this Order, the
4    Clerk of the Court shall dismiss all claims against Defendant Aon Benfield, Inc. with
5    prejudice.  Defendant Aon Benfield, Inc.'s Motion to Stay is denied without prejudice to
6    Defendant Aon Benfield, Inc. reasserting if Plaintiff chooses to file an amended Complaint.

7    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay Arbitration (Doc. 34)
8    is granted to the extent it seeks to prohibit Defendant Praetorian from arbitrating claims for
9    fraudulent inducement and negligent misrepresentation and is otherwise denied.

10    **IT IS FINALLY ORDERED** that Defendant QBE Insurance Group Ltd's  Motion
11    to Dismiss (Doc. 16) is granted in part and denied in part as follows**:**

12     **IT IS ORDERED** that Defendant QBE's Motion to Dismiss for lack of personal
13    jurisdiction is granted.  **IT IS FURTHER ORDERED** that QBE's alternative Motion to
14    Dismiss for insufficient process and failure to state a claim is denied as moot.  Plaintiff's
15    claims against Defendant QBE are dismissed without prejudice to Plaintiff reasserting in a
16    Court of proper jurisdiction.

17    DATED this 28th day of August, 2012.

18
19
20                                          _____
                                            James A. Teilborg
                                            United States District Judge
21
22
23
24
25
26
27
28

- 27 -